UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH HELEN BROWNSBERGER,<br><br>          Plaintiff,<br><br>     v.<br><br>KILOLO KIZAKAZI,[1]<br><br>          Defendant. | CIVIL ACTION NO. 3:20-CV-01426<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Plaintiff Elizabeth Helen Brownsberger ("Brownsberger") brings this action under sections 205 and 1631 of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Doc. 1). The matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 5; Doc. 6).

For the following reasons, the Commissioner's decision will be **VACATED**, and the case will be **REMANDED** for further consideration.

---

[1] The Court has amended the caption to replace, as the named defendant, Social Security Commissioner Andrew M. Saul, with his successor, Social Security Commissioner Kilolo Kijakazi. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

I. **BACKGROUND AND PROCEDURAL HISTORY**

On November 28, 2017, Brownsberger protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income, claiming disability beginning July 1, 2017. (Doc. 12-2, at 13). The Social Security Administration initially denied both applications on March 20, 2018. (Doc. 12-2, at 13). On April 4, 2018, Brownsberger filed a request for a hearing, which Administrative Law Judge (ALJ) Randy Riley held on March 20, 2018. (Doc. 12-2, at 13). In a written opinion dated April 19, 2019, the ALJ determined that Brownsberger was not disabled from July 1, 2017, through the date of the decision, and therefore not entitled to benefits under Titles II or XVI. (Doc. 12-2, at 22). On July 9, 2020, the Appeals Council denied Brownsberger's request for review. (Doc. 12-2, at 2).

On August 12, 2020, Brownsberger filed the instant complaint. (Doc. 1). The Commissioner responded on February 19, 2021, providing an answer and the requisite transcripts from Brownsberger's disability proceedings. (Doc. 11; Doc. 12). The parties then filed their respective briefs, with Brownsberger raising three bases for reversal or remand. (Doc. 15; Doc. 18).

II. **STANDARDS OF REVIEW**

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers

in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905.[2] Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A.   ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

### B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(d).

evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Brownsberger was disabled, but whether the Commissioner's determination that Brownsberger was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that

the scope of review on legal matters is plenary). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

**III.   THE ALJ'S DECISION**

In his written decision, the ALJ determined that Brownsberger "has not been under a disability, as defined in the Social Security Act, from July 1, 2017, through the date of this decision." (Doc. 12-2, at 22). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the outset, the ALJ determined that Brownsberger met the insured status requirement of the Social Security Act through March 31, 2021. (Doc. 12-2, at 15).

**A.   STEP ONE**

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1520(b), 416.920(b). In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574, 416.974.

Here, the ALJ determined that Brownsberger "has not engaged in substantial gainful activity since July 1, 2017, the alleged onset date." (Doc. 12-2, at 15). Thus, the ALJ's analysis proceeded to step two.

B.  STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that the claimant does not have an impairment or combination of impairments that significantly limits his or her "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ analysis continues to the third step.

Here, the ALJ concluded that Brownsberger had the following severe impairments: fibromyalgia, bilateral knee osteoarthritis, degenerative disc disease, and anemia. (Doc. 12-2, at 15). Additionally, the ALJ "considered the claimant's allegations of sleep disorder and obesity, yet found that these impairments were not severe." (Doc. 12-2, at 16). The ALJ also considered Brownsberger's medically determinable mental impairments of depression and generalized anxiety disorder and determined that they were non-severe. (Doc. 12-2, at 16).

C.  STEP THREE

At step three, the ALJ must determine whether an impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ determined that none of Brownsberger's impairments, considered

individually or in combination, meet or equal the severity of a listed impairment. (Doc. 12-2, at 17). The ALJ considered the listings under sections 1.02 – major dysfunction of a joint, 1.04 – disorders of the spine, and 7.05 – hemolytic anemias. (Doc. 12-2, at 17-18).`

     D.    RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the evidence presented. At this intermediate step, the ALJ considers "all [the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry where the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).

Here, the ALJ found that while Brownsberger's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (Doc. 12-2, at 19). The ALJ concluded that Brownsberger has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (Doc. 12-2, at 18). The ALJ noted that Brownsberger is limited to occasional climbing of stairs, balancing, stooping, and crouching and that she can never perform foot operations kneel or crawl. (Doc. 12-2, at 18). Additionally, the ALJ stated that

Brownsberger is limited to occupations that can be performed while using a cane to ambulate and that she must avoid exposure to extreme cold, extreme heat, wetness, humidity, excessive vibrations, and hazards. (Doc. 12-2, at 18)

### E.   STEP FOUR

Having assessed a claimant's RFC, step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). "If the claimant can perform his past relevant work despite his limitations, he is not disabled." *Hess,* 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv).

Here, the ALJ found that Brownsberger has no past relevant work. (Doc. 12-2, at 21). However, the ALJ found that other jobs exist in the national economy which Brownsberger could perform, so proceeded to step five in the sequential analysis. (Doc. 12-2, at 21).

### F.   STEP FIVE

At step five of the sequential analysis process, the ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, considering Brownsberger's age,

education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Brownsberger can perform. (Doc. 12-2, at 21-22). In making this determination, the ALJ relied on the vocational expert's testimony that Brownsberger is able to perform the requirements of occupations such as addresser, nut sorter, and cuff folder, with positions ranging from 18,000 to 90,000 nationally. (Doc. 12-2, at 21). Accordingly, the ALJ determined that Brownsberger is not disabled and denied her application for benefits. (Doc. 12-2, at 22).

### IV. DISCUSSION

On appeal, Brownsberger submits that (1) the ALJ erred and abused his discretion by failing to consider limitations arising from Brownsberger's severe impairments of fibromyalgia, bilateral knee osteoarthritis, degenerative disc disease, and anemia; (2) the ALJ erred and abused his discretion in failing to consider limitations arising from Brownsberger's non-severe impairments of left ankle arthritis, depression, anxiety, obesity, back pain, hip pain, or shoulder pain; and (3) the ALJ did not properly account for the opinions of Brownsberger's treating physicians Dr. Milunic and Dr. Surapaneni and the consultative exam physician Dr. Wolfe. (Doc. 15, at 11-24). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and reflects a proper application of the law and regulations. (Doc 18, at 26).

### A. THE ALJ ERRED IN CRAFTING BROWNSBERGER'S RFC DETERMINATION BECAUSE HE FAILED TO ADEQUATELY ADDRESS THE OPINIONS OF DR. MILUNIC AND DR. SURAPANENI UNDER THE NEW REGULATIONS.

Brownsberger argues that the ALJ erred in finding the opinions of her treating physician Dr. Milunic somewhat persuasive and her treating physician Dr. Surapaneni less persuasive when determining her RFC. (Doc. 15, at 19-24). Additionally, Brownsberger

argues that the ALJ incorrectly found the opinion of Dr. Wolfe less persuasive. (Doc. 15, at 23). The Commissioner contends that the ALJ properly evaluated the opinions of Dr. Milunic, Dr. Surapaneni, and Dr. Wolfe under the new regulations. (Doc. 18, at 23-25).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545, 416.920, 416.945; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence does not support the ALJ's RFC determination as it pertains to the opinions of Dr. Milunic and Dr. Surapaneni.

In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency;

relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion, which are the same factors that formed the foundation of the rule which prioritized the opinion of a treating source. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) (citing *Andrew G. v. Comm'r of Soc. Sec.,* No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.NY. Oct.1, 2020)); 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d 700, at 706-707.

The opinions of Dr. Milunic and Dr. Surapaneni are both acceptable medical sources as they are both licensed physicians. 20 C.F.R. §§ 404.1502(a)(1), 416.902(a)(1); (Doc. 12-10, at 63). Although Dr. Milunic and Dr. Surapaneni "are not entitled to any deference given

- 12 -

their status as 'treating physicians'" the ALJ failed to adequately address their opinions. *See Duhl v. Kijakazi,* No. 20-1123, 2021 WL 5909819, at *3 (W.D. Pa. Dec. 14, 2021); (Doc. 12-2, at 20. The ALJ is only required to consider the supportability and consistency of the opinions of Dr. Milunic and Dr. Surapaneni, however he has failed to do so. (Doc. 12-2, at 20). 20 C.F.R. § 404.1520c(b)(2) states that the ALJ "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinion[n] or prior administrative medical findin[g]." *See also* 20 C.F.R. § 416.920c(b)(2). The factor of supportability is considered through the lens that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).The factor of consistency is determined through "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 416.920c(c)(2), 404.1520c(c)(2).

When discussing the opinion of Dr. Milunic, the ALJ stated that he found her opinion somewhat persuasive and noted that "while this provider failed to assign functional limitations to the claimant, [her] statements seem appropriate given the claimant's treatment history." (Doc. 12-2, at 20). No where in his opinion does the ALJ explain how he considered the supportability and consistency factors in regard to the opinion of Dr. Milunic. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). Although the ALJ's statement that Dr.

Milunic's "statements seem appropriate given [Brownsberger's] treatment history" could demonstrate consistency with the record, the ALJ fails to express what parts of Brownsberger's treatment history are consistent with Dr. Milunic's opinion. (Doc. 12-2, at 20). Additionally, the ALJ does not provide any assessment of the supportability of Dr. Milunic's opinion. Cf. *Patricia L. v. Kijakazi*, No. 2:20-cv-6736, 2021 WL 5356113, at *9 (D.N.J. Nov. 17, 2021) (finding that the ALJ's opinion was supported by substantial evidence when he stated the opinions of the claimant's treating psychiatrist were "not at all persuasive; they are not supported by his treatment notes, and are inconsistent with the record as a whole" and cited to accompanying exhibits). The ALJ's statement regarding Dr. Milunic's opinion is not "a clear and satisfactory explication of the basis on which it rests" as he does not explain the reasons for his finding of somewhat persuasive. See *Cotter*, 642 F.2d at 704, 706-707. The commissioner argues that "Dr. Milunic opined that she did not believe that Plaintiff was disabled." (Doc. 18, at 25). Even assuming that the ALJ's opinion regarding the persuasiveness of Dr. Milunic's opinion would not affect the outcome of his decision, the ALJ has also failed to adequately articulate his reasoning for finding the opinion of Dr. Surapaneni less persuasive.

> The ALJ states that
>
> in review of the opinion of the claimant's provider, Sowmya Surapaneni, M.D. who opined that the claimant could sit no longer than two hours, stand no longer than twenty minutes, would miss work, and would be off tasks more than 15 percent, the undersigned finds their statements are less persuasive (Ex. SF, 8F). In reaching this finding, the undersigned notes that this provider readily acknowledges that the claimant would require a physical functional capacity report in order to accurately render such opinion, which was not performed (Ex. 8F/3).
> (Doc. 12-2, at 20).

The ALJ does not mention why he finds Dr. Surapaneni's opinion inconsistent with or unsupported by the record. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). Assuming that the ALJ's statement regarding the failure to perform a physical functional capacity report is a statement regarding its unsupported nature with Dr. Surapaneni's treatment notes, the ALJ makes no effort to explain why Dr. Surapaneni's statement is inconsistent with the record. (Doc. 12-2, at 20). The ALJ fails to clearly explain how Dr. Surapaneni's opinion is consisting or inconstant with the record, thus failing to provide "a clear and satisfactory explication of the basis on which it rests." *See Cotter*, 642 F.2d at 704, 706-707; see also 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); (Doc. 12-2, at 20).

When discussing the opinions of Dr. Milunic and Dr. Surapaneni, the ALJ makes no effort to compare or support their opinions with the record. (Doc. 12-2, at 20). The ALJ does not provide any citations to specific evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors. (Doc. 12-2, at 20). Therefore, the ALJ's finding that Dr. Milunic's opinion is somewhat persuasive and the Dr. Surapaneni's opinion is less persuasive is not supported by substantial evidence. *See Densberger*, 2021 WL 1172982, at *8 ("An ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion.").

V. **REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the

Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales,* 225 F.3d at 320; *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). In this case, the appropriate measure is to **REMAND** for further proceedings.

### VI. CONCLUSION

Based on the foregoing, the Commissioner's decision to deny Brownsberger benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court will be directed to **CLOSE** this case.

An appropriate Order follows.

**Dated: January 18, 2022**                             *s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **Chief United States Magistrate Judge**